## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISA GHIVECI,<br><br>    Plaintiff,<br><br>  v.<br><br><br>KANSAS CITY SOUTHERN, LYDIA I. BEEBE, LU M. CORDOVA, ROBERT J. DRUTEN, ANTONIO O. GARZA, JR., DAVID GARZA-SANTOS, JANET H. KENNEDY, MITCHELL J. KREBS, HENRY J. MAIER, THOMAS A. MCDONNELL, AND PATRICK J. OTTENSMEYER,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Denisa Ghiveci ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Kansas City Southern ("KCS" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning KCS and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against KCS and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of KCS and Canadian National Railway Company and its affiliates ("Canadian National") (the "Proposed Transaction")

2.     On May 21, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Canadian National.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive: (i) 1.129 shares of Canadian National; and (ii) $200.00 in cash per share of KCS common stock owned (the "Merger Consideration").

3.     On July 7, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against KCS and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to KCS shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of KCS shares.

9.      Defendant KCS is incorporated under the laws of Delaware and has its principal executive offices located at 427 West 12th Street, Kansas City, Missouri 64105.  The Company's common stock trades on the New York Stock Exchange under the symbol "KSU."

10.      Defendant Lydia I. Beebe ("Beebe") is and has been a KCS director at all times during the relevant time period.

11.      Defendant Lu M. Cordova ("Córdova") is and has been a KCS director at all times during the relevant time period.

12.      Defendant Robert J. Druten ("Druten") is and has been the Chairman of the Board of KCS at all times during the relevant time period.

13.     Defendant Antonio O. Garza, Jr. ("Garza") is and has been a KCS director at all times during the relevant time period.

14.     Defendant David Garza-Santos ("Garza-Santos") is and has been a KCS director at all times during the relevant time period.

15.     Defendant Janet H. Kennedy ("Kennedy") is and has been a KCS director at all times during the relevant time period.

16.     Defendant Mitchell J. Krebs ("Krebs") is and has been a KCS director at all times during the relevant time period.

17.     Defendant Henry J. Maier ("Maier") is and has been a KCS director at all times during the relevant time period.

18.     Defendant Thomas A. McDonnell ("McDonnell") is and has been a KCS director at all times during the relevant time period.

19.     Defendant Patrick J. Ottensmeyer ("Ottensmeyer") is and has been the President and Chief Executive Officer ("CEO") of KCS at all times during the relevant time period.

20.     Defendants Beebe, Córdova, Druten, Garza, Garza-Santos, Kennedy, Krebs, Maier, McDonnell, and Ottensmeyer are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant KCS, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     KCS is a transportation holding company that has railroad investments in the U.S., Mexico and Panama. Its primary U.S. holding is The Kansas City Southern Railway

Company, serving the central and south-central U.S. Its international holdings include Kansas City Southern de Mexico, S.A. de C.V., serving northeastern and central Mexico and the port cities of Lázaro Cárdenas, Tampico and Veracruz, and a 50 percent interest in Panama Canal Railway Company, providing ocean-to-ocean freight and passenger service along the Panama Canal. KCS' North American rail holdings and strategic alliances with other North American rail partners are primary components of a unique railway system, linking the commercial and industrial centers of the U.S., Mexico and Canada.

### The Company Announces the Proposed Transaction

23.     On May 21, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> MONTREAL & KANSAS CITY, Mo.--(BUSINESS WIRE)-- CN (TSX: CNR) (NYSE: CNI) and Kansas City Southern (NYSE: KSU) ("KCS") today announced that they have entered into a definitive merger agreement to create the premier railway for the 21st century.
>
> Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, KCS shareholders will receive $325[2] per common share based on CN's May 13, 2021 offer, which implies a total enterprise value of $33.6 billion, including the assumption of approximately $3.8 billion of KCS debt. KCS shareholders will receive $200 in cash and 1.129 shares of CN common stock for each KCS common share, with KCS shareholders expected to own 12.6% of the combined company. This represents an implied premium of 45% when compared to KCS' unaffected closing stock price on March 19, 2021. KCS' preferred shareholders will receive $37.50 in cash for each preferred share.
>
> *       *       *
>
> **Financing**
>
> The cash portion of the consideration will be funded through a combination of cash-on-hand and approximately $19 billion of new debt. Upon closing of the transaction and including the assumption of approximately $3.8 billion of KCS debt, we expect to have outstanding debt of approximately $33 billion, representing a leverage ratio of 4.5x pro forma 2021 EBITDA[3], and we expect to maintain an investment grade credit rating. Based on the proposed exchange ratio

and CN's current quarterly dividend of C$0.615 per CN share, KCS shareholders are expected to receive the equivalent of $2.30 in annual dividends per KCS share.

**Approvals and Timing**

CN and KCS are confident in their ability to obtain all necessary regulatory approvals, including from the Surface Transportation Board ("STB") and the Federal Economic Competition Commission (COFECE) and Federal Telecommunications Institute (IFT) in Mexico.

CN has proposed a "plain vanilla" voting trust. Upon KCS shareholder approval of the transaction, and satisfaction of customary closing conditions, CN will acquire KCS shares and place them into the voting trust. KCS shareholders will receive the merger consideration immediately upon the closing of CN's voting trust, which is expected to be in the second half of 2021.

Following this step, the STB and other regulatory authorities must approve CN's control of KCS. The completion of the transaction is expected to take place in the second half of 2022. Upon completion, CN and KCS will begin the integration process to realize the significant benefits of the combination for their stakeholders.

For more information on CN's acquisition of KCS, please visit www.ConnectedContinent.com.

**Advisors**

J.P. Morgan and RBC Capital Markets are acting as CN's financial advisors, and Centerview Partners LLC is also serving as a financial advisor. Cravath, Swaine & Moore LLP, Sidley Austin LLP, Norton Rose Fulbright LLP, Torys LLP, Agon and Stikeman Elliot LLP are providing legal counsel to CN.

BofA Securities and Morgan Stanley & Co. LLC are serving as financial advisors to Kansas City Southern. Wachtell, Lipton, Rosen & Katz, Baker & Miller PLLC, Davies Ward Phillips & Vineberg LLP, WilmerHale, and White & Case, S.C. are serving as legal counsel to Kansas City Southern.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

24.     On July 7, 2021, the Company authorized the filing of the Proxy Statement with

the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of

the Proposed Transaction.

25.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

26.     The Proxy Statement contains projections prepared by the Company's and Canadian National management concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

_____

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

29.     With respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) EBITDA; (ii) Earnings per share (adjusted); and (iii) Unlevered Free Cash Flows

30.     With respect to Canadian National's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; and (ii) Unlevered Free Cash Flows.

31.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

32.     The Proxy Statement contains the financial analyses and opinion of BofA Securities ("BofA") and Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

33.     With respect to BofA's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose: (i) the values for each transaction reviewed; (ii) the consideration paid to the shareholders of each of the target companies in the selected transactions; and (iii) the closing dates of the selected transactions.

34.     With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the Company's terminal values; (ii) line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of the range of perpetuity growth rates of 2.25% to 2.75%; (iv) the inputs and assumptions underlying BofA's use of the discount rates range of 6.0% to 7.5%; (v) the Company's net debt; and (vi) the number of fully diluted outstanding KCS common stock.

35.     With respect to BofA's *Wall Street Analysts Price Targets* analysis for the Company, the Proxy Statement fails to disclose the price targets observed as well as the sources thereof.

36.     With respect to BofA's *Present Value of Future Stock Price* for the Company, the Proxy Statement fails to disclose: (i) the basis for applying price to NTMEPS multiples of 16.0x to 22.0x; and (ii) the inputs and assumptions underlying BofA's calculation of the mid-point cost of equity discount rate of 7.7%.

37.     With respect to BofA's *Discounted Cash Flow Analysis* for Canadian National, the Proxy Statement fails to disclose: (i) Canadian National's terminal values; (ii) the line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying BofA's use of the range of perpetuity growth rates of 2.25% to 2.75%; (iv) the inputs and assumptions underlying BofA's use of the discount rates range of 5.5% to 7.0%; (v) Canadian Nationa's net debt; and (vi) the number of fully diluted outstanding Canadian National common stock.

38.     With respect to BofA's *Wall Street Analysts Price Targets* analysis for Canadian National, the Proxy Statement fails to disclose the price targets observed as well as the sources thereof.

39.    With respect to BofA's *Has/Gets Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying BofA's use of the discount rates ranging from 6.0% to 7.5%; (ii) the estimated additional net debt from the Proposed Transaction.

40.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the terminal values of the Company; (ii) all line items used to calculate unlevered free cash flow; (iii) the individual inputs and assumptions underlying the discount rates; and (iv) Morgan Stanley's basis for applying the multiples range used in the analysis.

41.    With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the values for each transaction reviewed; (ii) the consideration paid to the shareholders of each of the target companies in the selected transactions; and (iii) the closing dates of the selected transactions.

42.    With respect to Morgan Stanley's *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions observed in the analysis, as well as the premiums paid in each.

43.    With respect to Morgan Stanley's Eq*uity Research Analysts' Price Targets* analysis for the Company, the Proxy Statement fails to disclose the price targets observed in the analysis, as well as the sources thereof.

44.    With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the basis for Morgan Stanley's application of the range of multiples used in the analysis; and (ii) the inputs and assumptions underlying Morgan Stanley's use of the discount rate of 7.8%.

45.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for Canadian National, the Proxy Statement fails to disclose: (i) Canadian National's terminal values; (ii) the

line items used to calculate unlevered free cash flows; (iii) the inputs and assumptions underlying Morgan Stanley's use of the discount rates ranging from 5.5% to 6.8%; and (iv) the basis for Morgan Stanley's application of the multiples range of 11.75x to 13.25x.

46.    With respect to Morgan Stanley's Equity Research Analysts' Price Targets analysis of Canadian National, the Proxy Statement fails to disclose the price targets observed in the analysis, as well as the sources thereof.

47.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

48.    Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

49.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

54.     The Defendants knew or were negligent in not knowing that the Proxy Statement

is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

55.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

56.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

57.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of KCS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of KCS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

63.     In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 4, 2021                                          Respectfully submitted,

By: _/s/ Joshua M. Lifshitz_
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*